**THE STATE OF OHIO, Appellee,**

v.

**HART, Appellant.**

[Cite as *State v. Hart* (1996), 112 Ohio App.3d 327.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA95–11–187.

Decided July 1, 1996.

*John F. Holcomb,* Butler County Prosecuting Attorney, and *Richard A. Hyde,* Assistant Prosecuting Attorney, for appellee.

*Mark T. Tillar,* for appellant.

WALSH, Presiding Judge.

Defendant-appellant, Edward J. Hart, appeals his conviction for the rape and sexual battery of his two adopted sons.

Appellant married Madeline Hart in 1991. In 1992, he adopted Madeline's two children from a previous relationship: Joseph, born November 13, 1979, and Michael, born January 13, 1981.

On April 11, 1995, Madeline was visiting Michael, who was about to be released from the Butler County Juvenile Detention Facility. Michael told her he did not

want to come home, but that he wanted to be put into foster care. After some questioning by his mother, Michael told her, "Ed's been touching me wrong." The children's services board investigated Michael's statements, and on April 12, 1995, appellant was removed from his home by court order. He was subsequently charged with and indicted for one count of rape of Michael in violation of R.C. 2907.02(A)(1)(b), two counts of sexual battery against Michael, and two counts of sexual battery against Joseph in violation of R.C. 2907.03(A)(5).[1]

The case was tried to a jury. At trial, Michael testified that during the 1992–1993 school year when he was eleven to twelve years old, appellant started "playing" with him. Michael stated that this included "rubbing [Michael's] penis" and, after about six months, putting "[appellant's] penis in [Michael's] butt." Michael also testified that appellant made Michael "rub [appellant's] penis a couple times * * * about five times." On one occasion appellant tried to have Michael perform fellatio upon him, but Michael resisted and appellant did not force him. Michael testified that appellant engaged in anal intercourse with him some ten to fifteen times from 1992 until April 1995.

Joseph also testified at trial as to his sexual abuse by appellant. Joseph stated that when he was nearly thirteen appellant started playing with Joseph's penis "a couple times a week." About two months later, appellant had Joseph masturbate him, and two weeks after that, appellant engaged Joseph in anal intercourse. Joseph testified that "he made me stick my penis in his butt, and then eventually he made me stick; he stuck his in mine." According to Joseph, appellant engaged in anal intercourse with Joseph forty to fifty times between September 1992 and April 1995. Appellant also engaged in thirty to forty episodes of fellatio with Joseph during this same period of time.

After the three-day trial, appellant was convicted on all counts. He was sentenced to twenty-five years' incarceration on the rape charge and two years'

---

1. R.C. 2907.02(A)(1)(b) states:

"No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:

" * * *

"(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

R.C. 2907.03(A)(5) states:

"No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

" * * *

"(5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis."

"Sexual conduct" is defined as follows:

"[V]aginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

incarceration on each of the charges of sexual battery. The sentences for sexual battery were run consecutively with each other and concurrently with the sentence for rape.

In his first assignment of error, appellant states that the trial court unconstitutionally applied Ohio's rape shield law, infringing his Sixth Amendment right to confront witnesses against him and his right to a fair trial under the Due Process Clause. At trial, appellant sought unsuccessfully to introduce testimony that Michael and Joseph had engaged in a previous incident of homosexual activity with each other and that he severely punished them for it. Appellant argues that such testimony could be used to show bias and to impeach the victims' credibility, *i.e.*, to show that they had fabricated their testimony of sexual abuse by appellant in order to have him removed from their home and to escape his harsh disciplinary measures. The trial judge did not allow evidence of any of the boys' prior sexual activity, citing the Ohio rape shield law. We agree with the trial court's decision and overrule the first assignment of error.

Ohio's rape shield law is codified at R.C. 2907.02(D). It states:

"Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

The statute essentially prohibits the introduction of any extrinsic evidence pertaining to the victims' prior sexual activity. Such evidence is not to be admitted unless the trial court determines it is material to a fact at issue and that its prejudicial nature does not outweigh its probative value. *State v. Guthrie* (1993), 86 Ohio App.3d 465, 467, 621 N.E.2d 551, 552–553. The only exceptions to this prohibition involve "evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender." None of these exceptions apply in this case. R.C. 2907.02(D). It is within the sound discretion of the trial court to determine the relevancy of evidence and to apply R.C. 2907.02(D) to best meet the purpose of the statute. *Id.*

It is well established that the "rights to confront and cross-examine witnesses and to call witnesses in one's own behalf" are essential to due process. *State v. Gardner* (1979), 59 Ohio St.2d 14, 16–17, 13 O.O.3d 8, 9–10, 391 N.E.2d 337, 339–340. However, these rights must be balanced against the state's interest that R.C. 2907.02(D) was designed to protect. See *id.* at 17, 13 O.O.3d at 9–10, 391 N.E.2d at 340. To determine whether R.C. 2907.02(D) has been

unconstitutionally applied, we must balance the state's interests with the probative value of the excluded evidence. *Id.* Legitimate state interests advanced by the rape shield law include guarding the victims' sexual privacy and preventing them from undue harassment, discouraging a tendency in sexual assault cases to try the victims rather than the defendant, and, by excluding inflammatory, prejudicial and only marginally probative evidence, aiding in the truthfinding process. *Id.* at 17–18, 13 O.O.3d at 9–10, 391 N.E.2d at 340–341.

■ To assess the probative value of excluded evidence, it is necessary to examine its relevance to the issues which it is offered to prove. *Id.* at 18, 13 O.O.3d at 10, 391 N.E.2d at 340–341. Appellant contends that the evidence concerning the alleged homosexual encounter between Michael and Joseph Hart and the severe discipline that followed was necessary to show the bias the victims had against him. While evidence of the appellant's harsh disciplinary measures may have been relevant to this issue, that evidence was not excluded by the trial court. We agree with the trial court's determination that it was possible for appellant to introduce evidence that the boys were seeking retribution, *i.e.,* testimony concerning appellant's methods of discipline, while still preserving the rape shield law. Likewise, we do not find that the probative value of the excluded testimony outweighed the state's interest in preventing an intrusion into the victims' privacy or the undue harassment of the victims. See *id.* at 17–18, 13 O.O.3d at 9–10, 391 N.E.2d at 340–341.

■ Appellant's attempts to impeach the victims' credibility with the same testimony were also correctly prohibited by the trial court. The Ohio Supreme Court has determined that where contested evidence of the victim's sexual activity is proffered solely to impeach a victim's credibility, its admission is prohibited by the rape shield law. *State v. Ferguson* (1983), 5 Ohio St.3d 160, 165, 5 OBR 380, 384–385, 450 N.E.2d 265, 269–270. Moreover, this court has determined previously that the rape shield law "does not provide for impeachment of reputation for truth-telling by evidence of a victim's past sexual conduct which tends to show that [he] may have the ability to fabricate a new but fictitious story." *State v. Tomlinson* (1986), 33 Ohio App.3d 278, 280, 515 N.E.2d 963, 966. Because the prejudicial nature of the excluded testimony outweighs any probative value it may have had, we find that the trial court's application of R.C. 2907.02(D) was not an abuse of discretion and that it did not violate appellant's constitutional rights. The first assignment of error is overruled.

■ In his second and third assignments of error, appellant states that the trial court erred by entering judgments that were against the sufficiency and the weight of the evidence. These assignments of error are not well taken.

 In reviewing both the weight and sufficiency of evidence, an appellate court is to apply the same test. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. It will not reverse a conviction unless it finds that "reasonable minds could not reach the conclusion reached by the trier of facts." *Id.*, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573–574. The question to be asked by this court is whether "after viewing the evidence in the light most favorable to the prosecution, * * * any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at 273, 574 N.E.2d at 503.

 After a thorough review of the record, we find that there was substantial, credible evidence to support appellant's convictions on all five counts in the indictment. Count One charged appellant with the rape of Michael in violation of R.C. 2907.02(A)(1)(b), which defines rape, in part, as engaging "in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age." Evidence was presented at trial that Michael was born on January 13, 1981, and did not turn thirteen until January 1994. Michael testified at trial appellant had raped him anally several times between September 1992 and December 1993, before his thirteenth birthday. Counts Two and Three charge appellant with sexual battery of Michael, and Counts Four and Five with the sexual battery of Joseph. Sexual battery is defined as engaging in "sexual conduct with another * * * when · * * * [t]he offender is the other person's * * * adoptive parent." R.C. 2907.03(A)(5). Both boys testified at length at trial as to the sexual acts—including anal intercourse, fellatio, and mutual masturbation—in which appellant, their adoptive father, engaged them. The jury believed the victims' testimony and rejected appellant's interpretation of the evidence. It is not the role of an appellate court to "second-guess the jury's finding." *State v. Garner* (1995), 74 Ohio St.3d 49, 60, 656 N.E.2d 623, 635. The second and third assignments of error are, therefore, overruled.

*Judgment affirmed.*

KOEHLER and POWELL, JJ., concur.